CON-ROD EXCHANGE, Inc., v. HEN-
RICKSEN, Acting Collector of
Internal Revenue.
No. 8570.

District Court, W. D. Washington, S. D.
Aug. 17, 1939.

Wright, Jones & Bronson, of Seattle, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., Oliver P. Malm, Deputy U. S. Atty., of Tacoma, Wash., and Thomas R. Winter, Deputy U. S. Atty., of Seattle, Wash., for defendant.

YANKWICH, District Judge.

Plaintiff seeks to recover the sum of $254.80 paid upon a further assessment, under Section 606(c) of the Revenue Act of 1932 (Chapter 209, 47 Stats. 262, 26 U.S.C.A. following section 1481), for the period from October 1, 1935, to August 31, 1936, made on the sale of automobile connecting rods, which the plaintiff rebabbitted and sold. A claim for refund, duly made by the plaintiff, was rejected by the Commissioner of Internal Revenue on November 10, 1937.

The rebabbitting consisted in applying a metal alloy to the inside and edges of the bearing formed by the detachable cap and the large end of the shank of the rod. The method of doing the work was, in substance, this: Plaintiff purchased shanks from wrecking houses, either in Seattle or elsewhere, to establish a stock in a particular type of connecting rod. After a stock was once established, individual customers would bring in used shanks for rebabbitting. If the plaintiff had in stock a rebabbitted connecting rod of the same size and type as the customer's, it was given in exchange to the particular customer. In the case of new automobile models, with new types of connecting rods, the plaintiff would purchase some new connecting rods from the automobile manufacturers. To rebabbitt the rod a used

forging or shank, after the cap and the shank had been separated, was placed in a container of hot babbitt, which would melt off and dissolve the old babbitt still adhering to the old forging. The forging was then placed in an acid solution which cleaned off all grease and dirt. Then the new alloy was applied to the bearing by pouring, after which the surface of the new babbitt was evened so that the cap and the shank would fit together again. The inside of the new babbitted bearing was rough-bored to a size slightly smaller than what was to become the finished diameter, then a broaching occurred, which, finally, resulted in providing the prescribed diameters. The connecting rods were then placed in plaintiff's stock.[1]

It is the contention of the Government that the tax was properly collected, because the process of rebabbitting is one of manufacture.

I had occasion recently to consider the meaning of the words "manufacturer" and "producer" in Section 606(c) of the Revenue Act of 1932, in Armature Exchange, Inc. v. United States, D.C.Cal.1938, 28 F.Supp. 10. I there held that the rewinding of automobile armatures was merely the repair or restoration of an article to its original state and not the "production" or "manufacture" of a new article.

It is the contention of the Government that the reasoning behind that decision does not apply here. Granting that my conclusion was correct, as to armatures, the Government insists that the process of rebabbitting, as here described, is really a process of manufacture and production of a new article from a shank which was nothing but scrap material.

The Government relies strongly upon Clawson & Bals, Inc. v. Harrison, D.C.Ill., Nov. 1938.[2]

I had occasion to comment on that decision in the foot note to the opinion in Armature Exchange, Inc. v. United States, supra. It is grounded upon a broad definition of "manufacture", which, to my view, is not warranted by the decisions on the subject.

In a case like this, where no binding precedents from higher courts exist to guide us, the resort to definitions is very helpful. But even that must be subordinated to the final, pragmatic test, namely, the visual contrast between the appearance of the article before the process is applied to it and its appearance after the process is completed.

There is in evidence a used connecting rod in the form in which it usually comes to the plaintiff and a rebabbitted rod, after it has been processed by it. A look at the two shows that there has been no change in shape or identity of the rod. Its dimensions have remained the same. The only new part is a thin layer of metal alloy which has been applied to the bearing, smoothed out and the edges evened, so that the bearing will have the holding quality which had been lost in the old one through the wearing off of the old babbitt. The function of the shank is still the same. The operations are simpler than the operations resulting in the rewinding of armatures. The result achieved is less of a structural change than takes place when old armatures are rewound.

Occasionally, it is true, the bolts which connect the cap to the shank are replaced by bolts actually purchased by the plaintiff.

---

[1] There is no disagreement between the Government and the taxpayer, either as to the nature of the work done on the rods by the plaintiff or the structural result.

The Government's brief has this description:

"The connecting rods * * * are steel forgings consisting of a shank and a cap and two bolts with nuts uniting the said shank and cap. The larger end of the rod contains the bearing, consisting of a babbitt alloy integrally cast and permanently bonded to the shank and cap of the rod. The babbitt alloy being a soft metal, the bearing in use is subject to destruction by reason of cutting,

wearing and burning out. The plaintiff corporation removes the destroyed babbitt alloy from the shank and cap, leaving the shank and cap in its entirety. Babbitt alloy is then replaced in the shank and cap, and after the refilling with the babbitt, the babbitt alloy is machined to obtain a smooth surface, and is clamped or fastened into the shank and cap with the original screws.

"In some instances, a process of 'rebushing' is necessary in the small end of the connecting rod, and when necessary new bolts and nuts and shims are supplied."

[2] No opinion for publication.

But the business in which it is engaged chiefly is that of replacing the worn-out babbitt in the bearing of a new babbitt.

Whether we apply to the article which is finally sold the test of identity of structure or identity of function, the result is the same.

We do not have here a process of manufacture or production of an article of commerce. We have merely a process of renewing, for further use, a standard article of commerce—an automobile part —by resurfacing a worn-off portion of it with a thin layer of metal alloy, which, in all probability, does not enhance its weight by more than a few ounces. "Manufacture is transformation—the finishing of raw materials into a change of form for use." Kidd v. Pearson, 1888, 128 U.S. 1, 20, 9 S.Ct. 6, 10, 32 L.Ed. 346. Here, there is no change of form, identity or function. The rehabilitated article is not a new article but one which has been restored to its original shape and use by the mere replacing of the worn-off surface on part of it.

Certainly if a retreaded tire in which the worn-off surface is replaced, so as to add four and one-half to five pounds weight over and above what the new tire weighed is not a process of manufacture (Skinner v. United States, D.C.1934, 8 F.Supp. 999), the replacement of a thin film of metal which does not add more than a few ounces to the weight of the connecting rod is not manufacture. See: Hempy-Cooper Mfg. Co. v. United States, D.C.Mo.1937, 19 American Federal Tax Reports, 1313; Bardet v. United States, D.C.Cal.1938, Prentice-Hall Federal Tax Current Court Decisions for 1938, par. 5.507.

It is unimportant that the connecting rod without the rebabbitting is useless as a connecting rod. And that through the process, something is made serviceable which was not so before, does not make the process one of manufacture. To consider "manufacturing" any process aiming to "make a serviceable product" (as does Judge Barnes in Clawson & Bals, Inc. v. Harrison, supra) would call for inclusion of all repairing.

For the function of repairing is to make useable an article which without it could not be used. A frying pan without a handle is useless as a frying pan. So is a chair in which the seat or a leg is broken. The workman who adds a new handle to a pan, or repairs the seat or leg of a chair by replacing the worn out portion with new materials, in effect, takes something out of a scrap heap or a junk pile and restores it to usefulness.

Still we would be doing violence to the English language if we called these acts of repairing acts of manufacture.

The rehabilitated connecting rod competes in the open market with new connecting rods. And were we dealing with a sales tax it could be held that, regardless of method of production, the ultimate act is a sale in both instances. But the tax assessed is *an excise tax, not a sales tax.*

It is imposed on the sale only *if the seller is a producer or manufacturer.*

The final test is, therefore, not whether *there was a sale,* but whether *there was a sale by a manufacturer or producer.*

In my view, the plaintiff was not a manufacturer or producer either when it rebabbitted rods brought in by others and returned the identical rod (as it did in 75 per cent of its sales during the period) or when it exchanged an old rod on which the babbitt had worn off for a newly rebabbitted one (as it did in 25 per cent of its sales).

The assessment was, therefore, illegally levied.

Section 621 of the Revenue Act of 1932, 26 U.S.C.A. following section 1481, reads (in part): "(d) No overpayment of tax under this title shall be credited or refunded (otherwise than under subsection (a), in pursuance of a court decision or otherwise, unless the person who paid the tax establishes, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, (1) *that he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee,* or (2) that he has repaid the amount of the tax to the ultimate purchaser of the article, or unless he files with the Commissioner written consent of such ultimate purchaser to the allowance of the credit or refund." (Italics added)

The object of provisions of this character is to prevent unjust enrichment by taxpayers who might seek recovery of a tax which had been absorbed into the price of the article sold. Rightly. For if the

taxpayer has shifted this tax onto others, they and not he paid it. And the tax refunding statutes, being equitable in nature, the law would be aiding inequity if it allowed recovery by one who, although he has, *apparently*, paid the tax, has, *actually*, forced another to do so. United States v. Jefferson Electric Mfg. Co., 1934, 291 U.S. 386, 402, 54 S.Ct. 443, 78 L.Ed. 859; Union Packing Co. v. Rogan, D.C.Cal.1937, 17 F.Supp. 934, 942; Anniston Mfg. Co. v. Davis, 1937, 301 U.S. 337, 348, 57 S.Ct. 816, 81 L.Ed. 1143; White Packing Co. v. Robertson, 4 Cir. 1937, 89 F.2d 775, 780, 781.

The evidence shows that the sales of rebabbitted rods were made at prices fixed by larger competitors who published, regularly, price lists. This was maintained at all times. Even after the audits made by the .agents of the Internal Revenue Department and which resulted in the additional assessment, no change was made to include the additional taxes that might be assessed against them. An executive officer of the plaintiff testified positively that at no time was the price fixed by himself or anyone connected with the company so as to include the tax.

Some of the price lists which the plaintiff sought to meet show that the particular competitor had included the excise tax in the price. There is no showing that plaintiff was aware of that fact. But even if there were, it could not be held to outweigh the positive statements that a possible excise tax *was not in contemplation* when the price was fixed.

Two merchants may sell the same article at the same price, and yet entirely different elements might enter into the determination of the price. A large dealer, engaged in rebabbitting on a national scale, with a large factory doing the repairing, would have a lower cost, enabling him to absorb the excise tax and still compete with a smaller dealer, like the plaintiff, whose cost of production must be higher and who does not absorb the tax. So the argument from identity of price of little help.

I am of the view that the plaintiff has satisfied the requirement of the section and has shown that the tax was not passed on to the consumer.

Judgment will be for the plaintiff as prayed for in the Complaint, subject to correct computation of amounts to be made by the parties.