**HENRICKSEN v. SEWARD et al.**

No. 10235.

Circuit Court of Appeals, Ninth Circuit.

May 24, 1943.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and George H. Zeutzius, Sp. Assts. to Atty. Gen., J. Charles Dennis, U. S. Atty., of Seattle, Wash., Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., and Thomas R. Winter, Sp. Asst. to Chief Counsel, B.I.R., of Seattle, Wash., for appellant.

H. B. Jones, of Seattle, Wash., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The question presented by this appeal is whether the principle of res judicata is applicable in a suit by a taxpayer to recover manufacturers' excise taxes, where in an earlier suit by the same taxpayer it had been held that the latter was not a manufacturer or producer.

The statute involved is § 606(c) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev. Acts page 610 imposing, among others, a tax upon automobile parts "sold by the manufacturer, producer, or importer" thereof. Appellees are the liquidating trustees of Con-Rod Exchange, Inc., a corporation which at all pertinent times had been engaged in the rebabbiting of worn automobile connecting rods and selling the rebuilt articles. The Collector assessed against this corporation excise taxes for the period from October 1, 1935 to August 31, 1936.[1] The corporation paid

---

[1] The manufacturers' excise tax, unlike income and many other taxes, is not collected on an annual basis. Monthly returns are made by the manufacturer, and the tax is paid or collected monthly. Int.Rev.Code § 3448, 26 U.S.C.A. Int. Rev.Code, § 3448.

the assessment and claimed a refund, the claim being disallowed November 10, 1937. Suit for refund was thereupon brought in the Federal court for the Western District of Washington, and after hearing it was adjudged that the corporation was not a manufacturer or producer within the meaning of the taxing statute. Con-Rod Exchange, Inc., v. Henricksen, D.C. 1939, 28 F.Supp. 924. From this judgment no appeal was taken by the Collector.

Two other assessments against the corporation, involving different periods, were made by the Collector, one being for the period from June 21, 1932 to September 30, 1935, the other for the period October 1, 1936 to September 30, 1938. These assessments were paid on various dates from November 1936 to March 1940. Claims for refund were filed in 1940 and were disallowed. The present suit is for the recovery of the payments.

It is conceded that the decision in Con-Rod Exchange, Inc., v. Henricksen, supra, is not the law. After that case was decided this court in United States v. J. Leslie Morris, Inc., 9 Cir., 124 F.2d 371, and United States v. Moroloy Bearing Service, 9 Cir., 124 F.2d 373,[2] held that the rebabbiting of connecting rods by processes and pursuant to business practices not differing essentially from those of the plaintiff in that suit amounted to manufacture or production within the purview of the statute.[3] However, the trial court

was of opinion that the prior judgment in favor of this taxpayer foreclosed the question, and its prayer for refund was accordingly granted.

Precedent apart, we are far from convinced that this case is one in which the principle of estoppel by prior judgment ought to be applied. While the mechanical processes and the business practices of the taxpayer were found to be substantially identical in the several periods, nevertheless the transactions held not subject to tax in the earlier suit were not the transactions subjected to tax in this, nor were the periods involved the same. The former decision did not serve to set at rest any factual dispute as to the taxpayer's methods, for there was none, the court stating [28 F.Supp. 925] that there was no disagreement between the parties either as to the nature of the work done on the rods or the structural result. Nor is this a case where the Government has split a cause of action or sought to present its grounds seriatim—considerations often moving the courts to decline a second inquiry.[4]

But we have to consider the precedents. The federal courts have long applied the principle of estoppel by judgment in the tax field, although not uniformly so.[5] Some of the decisions of the Supreme Court on the subject, if they stood alone, might well be thought to require an affirmance. Notably is this true of Tait v. Western Maryland Ry. Co., 289 U.S. 620,

---

[2] See also United States v. Armature Exchange, 9 Cir., 116 F.2d 969; Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991; United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589; Bietrite Tire Co. v. The King, 1937 Canada L. Rep. 364.

[3] Although the question has not been ruled on by the Supreme Court, little doubt remains that it has been definitely settled by the uniform decisions of several of the Circuit Courts of Appeals and by district court decisions in other circuits. In enacting the Revenue Act of 1941, 26 U.S.C.A. Int.Rev.Acts, Congress declined to exempt rebuilt automobile parts from the payment of manufacturers' excise tax. The Senate Committee on Finance said in its report (S. Rep. No. 673, part 1, p. 48, 77th Cong., 1st Sess.): "There are several decisions of the United States Circuit Courts of Appeals holding rebuilt parts and accessories to be subject to the manufacturers' tax. Rebuilt parts compete with new parts, and it appears appropriate that they should be subject to the same tax.

Accordingly no change has been made."
It is stated in the Government's brief that in 1942 representatives of the automotive replacement parts industry sought without success to obtain an amendment to the section so as to exclude such parts from tax. (See House Hearings before Committee on Ways and Means, 77th Cong., 2d Sess., Revenue Revision of 1942, Vol. 2, pp. 1907–1921; also Senate Hearings before Committee on Finance, 77th Cong., 2d Sess., Revenue Act of 1942, Vol. 1, pp. 1143–1152.) The section was reenacted without change in the Revenue Act of 1942. Int.Rev.Code § 3403(c), 26 U.S.C.A. Int.Rev.Code § 3403(c).

[4] Cf. Stark v. Starr, 94 U.S. 477, 485, 24 L.Ed. 276.

[5] See discussion in United States v. Stone & Downer Co., 274 U.S. 225, 230, 231, 47 S.Ct. 616, 71 L.Ed. 1013. Consult Griswold "Res Judicata in Federal Tax Cases," 46 Yale L.J., p. 1320 (1937). Many of the cases are collected in this article.

53 S.Ct. 706, 77 L.Ed. 1405. Before commenting on that case, we turn to one more nearly akin to the present, namely, United States v. Stone & Downer Co., 274 U.S. 225, 47 S.Ct. 616, 618, 71 L.Ed. 1013.

There a judgment of the Court of Customs Appeals deciding the classification of goods and the duty upon their importation was held not res judicata upon another importation of the same kind of goods by the same importer. This holding, it is true, was professedly in deference to a rule established by the Court of Customs Appeals during the years when its jurisdiction over customs cases was exclusive and final. While the Supreme Court thought there should be an end of litigation as well in customs matters as in other tax cases, nevertheless it believed that "circumstances justify limiting the finality of the conclusion in customs controversies to the identical importation." The Court emphasized the discrimination, injustice and confusion which would flow from a contrary rule. It said: "The importing house which has by the principle of the thing adjudged obtained a favorable decision permanently binding on the government will be able to import the goods at a much better rate than that enjoyed by other importing houses, its competitors. * * * In the same way, if the first decision were against a large importing house, and its competitors instituted subsequent litigation on the same issues with new evidence or without it, and succeeded in securing a different conclusion, the first litigant, bound by the judgment against it in favor of the government must permanently do business in importations of the same merchandise at great and inequitable disadvantage with its competitors."

Tait v. Western Maryland Ry. Co., supra, had to do with an earlier decision of a Circuit Court of Appeals holding that the Railway Company had the right to deduct from gross income an amortized proportion of the discount on sales of bonds by its predecessors. This judgment was thought by the Supreme Court to work an estoppel against the Government in later litigation with the same taxpayer as to the latter's right to make like deductions for subsequent years under the same statutory provisions and Treasury regulations. Differing from the situation here, however,

the determinative factual transactions there, namely, the sales at discount, were closed incidents—static events incapable of change.

In the course of its opinion the Court [289 U.S. 620, 53 S.Ct. 707, 77 L.Ed. 1405] distinguished the Stone & Downer case, supra, saying that that holding "was justified by considerations which are absent in tax litigation." We think, though, that while the considerations which the Court appears to have had in mind were absent from the case before it, they are unmistakably present in suits involving the manufacturers' excise tax. Thus if the admittedly erroneous judgment of the district court were to be given conclusive effect on all like transactions of this taxpayer, no matter how long continued, the latter would obviously enjoy an immunity from tax not shared by its competitors.[6] Naturally, the advantage or disadvantage may operate either way, as was pointed out in the Stone & Downer opinion, supra, so that conceivably a manufacturer or importer who has suffered an erroneous adverse decision may be placed at a permanent disadvantage as compared with others in competition with him.

In a later tax decision, Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 332, 81 L.Ed. 465 the Court declined to apply the ruling of the Tait case, saying it was not applicable. A Circuit Court of Appeals had held a trust beneficiary taxable upon trust income notwithstanding assignments previously made by him, basing its ruling upon the ground that, under local— Illinois—law, the trust was a spendthrift trust giving the beneficiary no power to assign. There followed other proceedings to collect income taxes from the same person for subsequent years. Meanwhile an Illinois court, in a suit brought to determine the point, decided that the trust was not a spendthrift trust and upheld the assignments. When the tax proceedings reached the Supreme Court, the Government contended that the judgment of the Circuit Court of Appeals was res judicata. The Court thought otherwise, saying that the decision of the state court on the question of local law "created a new situation." not justly to be ignored.

While in the instant case the supervening decisions are those of Federal ap-

6 Under the Revenue Act of 1932 the excise tax in question was 2%. Since 1940 it has been 5%, Internal Revenue Code § 3403(c), 26 U.S.C.A. Int.Rev. Code, § 3403(c), so that the tax forms a very substantial part of the cost of doing business.

pellate courts rather than of a state court, the point of law appears to have been settled no less authoritatively in the one case than in the other. It is hard to distinguish between the two situations on any rational grounds. If the supervening state decision was a new fact, why are not the authoritative federal holdings also?

From these varying decisions of the court of last resort we conclude that the rule, as applied in tax litigation, is sufficiently elastic to permit of the balancing of conveniences and the weighing of other considerations as against that of desired repose. It would seem, indeed, that little repose results from a broad application of the doctrine of res judicata to recurring transactions in the tax field.[7] Before the principle can be applied in such cases the court must determine whether the transactions or practices of the taxpayer were the same over the several periods of time involved, or whether they differed in a taxable sense—not infrequently a difficult question to decide.[8] Moreover, in this instance the court had to determine the question, still hotly debated, whether or not the burden of the tax had been passed on by the taxpayer to his customers.[9] That dispute, at least, the court would have avoided had it simply applied existing law to the operations before it. Thus in tax controversies of this character, when the courts undertake to bestow on either party a vested right in an erroneous decision of law, they are apt, by multiplying the issues, merely to add fuel to the controversy.

Reversed.

[7] See Paul and Zimet "Res Judicata in Federal Taxation," as found in Selected Studies in Federal Taxation, Second Series, p. 104.

[8] Cf. Engineer's Club of Philadelphia v. United States, Ct.Cl., 42 F.Supp. 182; Duquesne Club v. Bell, D.C.Pa., 42 F. Supp. 123.

[9] See § 621(d), Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 3443(d).