### GILLESPIE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3123.

Circuit Court of Appeals, Tenth Circuit.

Oct. 29, 1945.

Rehearing Denied Jan. 2, 1946.

RICE, District Judge, dissenting.

———◆———

Harold E. Rorschach, of Tulsa, Okl. (Jack L. Rorschach, of Vinita, Okl., on the brief), for petitioner.

John F. Costelloe, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and J. Louis Monarch, all of Washington, D. C., on the brief), for respondent.

Before MURRAH, Circuit Judge, and RICE and SAVAGE, District Judges.

MURRAH, Circuit Judge.

The first question presented by this appeal is whether a judgment of the Tax Court involving amounts received by the taxpayer for the taxable year 1934, operates as an estoppel to the maintenance of this suit involving income of the taxpayer in subsequent years from the same source. The Tax Court held the taxpayer estopped by its former judgment, and that ruling, if correct, is dispositive of this appeal.

To effect an absolute division of community property, and to settle a suit for separate maintenance, the taxpayer, F. A. Gillespie, and his then wife, Maud Gillespie, entered into an agreement dated May 15, 1929. The agreement provided that the parties would, under a contract to be entered into with the F. A. Gillespie & Sons Company, a corporation, transfer the bulk of their community property to the Company, in consideration for which the Company would agree to pay them specified amounts for life. Pursuant to this agreement, property having an agreed fair market value of $1,464,240.22 was transferred to the Company, and the Company entered into a contemporaneous agreement with the two parties under which it agreed that in "part consideration" of the transfer of the property, it would pay the taxpayer and Maud Gillespie each $15,000 per year for life, and pay $10,000 per year to Maud Gillespie during her life as guaranteed dividends. Exclusive of the property transferred to the Company under the agreement, each of the parties retained $100,000 in cash and certain other real and personal property to be held by them individually, and the parties released each other reciprocally of all claims for support or inheritance, or any claim whatsoever against the property retained individually.

The F. A. Gillespie Company, to which the property was transferred, was a wholly owned family corporation, organized April 4, 1920, with a capital stock of $1,000,000, divided into 10,000 shares with a par value of $100 each. By a trust instrument executed February 9, 1921, 9,975 shares of the stock were transferred to F. A. Gillespie in trust for his wife and three children equally, and the remaining 25 shares were issued to the five members of the family equally. The trust by its terms was limited to the life of the last surviving beneficiary, and was made distributable among the surviving children or grandchildren of the trustor, or their heirs. On the death of the trustor within the trust period, the surviving children were entitled to the current distributions, and simi-

larly on their death to the grandchildren. In sum, the stock of the Company was held by the taxpayer in trust for the benefit of the named beneficiaries and their heirs.

During the taxable year 1934, taxpayer received the $15,000 from the Company under the terms of the contract, and Maud Gillespie, from whom he was divorced on February 19, 1932, received $20,000. The taxpayer did not return any of the $15,000 as taxable income for that year, and the Commissioner determined a deficiency, based on the contention that the entire $15,000 received from the Company under the contract was an annuity and hence taxable to him under Section 22(b)(2) of the Revenue Act of 1934,[1] 26 U.S.C.A. Int.Rev. Code, § 22(b)(2), and also that the amounts received by Maud Gillespie under the agreement were in the nature of alimony in the discharge of his marital obligations, and were therefore taxable to him as such.

On petition to the Board for redetermination, taxpayer, pleading the contracts, contended that the $15,000 received by him for the taxable year 1934 from the Company was in part payment of property he and his wife had sold to the Company, and since he had not received his cost, the same was a tax free return of capital. In the alternative, it was contended that if the $15,000, or any part thereof, be subject to tax, then only such portion of it was taxable as represented 3 per cent of what an annuity would have cost on May 15, 1929 (date of the contract), sufficient to pay $15,000 per annum during the life of the taxpayer. The dates of birth of taxpayer and Maud Gillespie were alleged, together with the cost of an annuity purchased from a reputable insurance company sufficient to pay the $15,000 per year for their respective lifetimes. The constitutionality of Section 22(b)(2), as sought to be applied, was not directly challenged in the petition, but the point was raised in the taxpayer's brief and argument to the Board.

After finding the facts as substantially herein related, the Board recognized the two questions presented: (1) Was the $15,000 received by the taxpayer in 1934 an annuity taxable to him under Section 22(b)(2) of the Revenue Act of 1934, or a return of capital and if it be considered as an an-

nuity whether only such portion thereof is taxable as equals 3 per cent of the cost of the same annuity, if purchased from a life insurance company—the taxpayer contending that any other application of the statute would be unconstitutional. (2) Was the $20,000 received by the taxpayer's wife during the year 1934 taxable to him as paid in discharge of his marital obligations.

The Board held [2] that by the terms of the contracts, the "consideration paid" for the annuities was the value of the property transferred to the F. A. Gillespie & Sons Company ($1,464,240.22), and since the statute taxed 3 per cent of the "consideration paid" for the annuities, there was no legal basis for the contention that the taxpayer was taxable only upon 3 per cent of an amount actuarially sufficient to purchase the same annuities from an insurance company; that since 3 per cent of the consideration paid greatly exceeded the amount actually received as annual annuities, there could be no excludable returns under the statute. On the constitutional question, the Board was of the opinion that the statute, as thus applied, was not unconstitutional simply because the "consideration paid" for the annuities was in excess of what they would have cost if purchased on an actuarial basis. In sum, the Board held that the entire $15,000 was not a return of capital, but was taxable as an annuity under Section 22(b)(2), and as thus applied the statute was not unconstitutional. The Board further held that the $20,000 received by the taxpayer's wife under the contract was her separate income and taxable as such.

Again in his returns for the taxable years 1936, 1937 and 1938, the taxpayer treated the $15,000 received under the same contract as non-taxable, and the Commissioner, following the decision of the Board, assessed deficiencies accordingly, whereupon the taxpayer commenced this suit in the Tax Court for a redetermination of his tax liability for the years in question. The petition raised the identical questions submitted to, and decided by, the Board in the former case, and in addition specifically challenged the constitutionality of Section 22(b)(2) of the Revenue Act of 1936 (identical to the corresponding section in the 1934 Act involved in the former proceed-

---

[1] Section 22(b)(2) provides that amounts received as annuity under any annuity or endowment shall be included in gross income, except the excess of amount received in the taxable year over an amount equal to 3 per cent of the aggregate premiums or consideration paid for such annuity.

[2] 38 B.T.A. 673.

ings). The Commissioner answered, pleading the former judgment by docket number as res judicata of all issues involved here, and the proceedings in the former case were offered and admitted in evidence. The only evidence in this case, not introduced in the prior proceedings, was proof tending to show that all of the property transferred to the Company in excess of an amount sufficient to purchase an annuity on an actuarial basis, was intended to be a gift to the Company for the benefit of his sons and grandchildren under the terms of the trust agreement. The Tax Court was of the opinion that these facts presented no new question for determination, and that the taxpayer was estopped by the judgment in the former case under the doctrine of Tait v. Western Maryland R. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; Commissioner v. Western Union Telegraph Co., 2 Cir., 141 F.2d 774; Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; and New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202.

■ Tait v. Western Maryland R. Co., supra, established the rule that although taxation is based upon annual accounting periods, each of which gives rise to a different cause of action, nevertheless the judgment in the first case is conclusive of the second if the issues presented are the same under precisely identical facts. But, the identity of the controlling facts must be clearly and affirmatively shown upon the record. Argo v. Commissioner, 5 Cir., 150 F.2d 67; Pelham-Hall Co. v. Hassett, 1 Cir., 147 F.2d 63; Stoddard v. Commissioner, 2 Cir., 141 F.2d 76; Leicht v. Commissioner, 8 Cir., 137 F.2d 433; Campana Corp. v. Harrison, 7 Cir., 135 F.2d 334; Henricksen v. Seward, 9 Cir., 135 F.2d 986, 150 A.L.R. 1. The doctrine does not apply when the judgment pleaded as an estoppel is based upon controlling state decisions subsequently repudiated by supervening decisions, thereby necessitating re-examination and application of state law to the Federal question. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. Or where authoritative decisions of the Federal courts repudiate the judgment pleaded as an estoppel, thereby having the effect of perpetuating acknowledged error. Henricksen v. Seward, supra.[3] But see Commissioner v. Western Union Tele-

graph Co., supra. It is rightly said that the doctrine should be sparingly applied in tax cases involving liability for different years, and generally it is not applied where the taxable events and transactions are by their nature fluid and subject to change from year to year. Cf. Argo v. Commissioner, supra; Stoddard v. Commissioner, supra; Henricksen v. Seward, supra; Campana Corp. v. Harrison, supra; Engineers Club v. United States, 42 F.Supp. 182, 95 Ct.Cl. 42, cert. denied 316 U.S. 700, 62 S.Ct. 1294, 86 L.Ed. 1769; Linen Thread Co. v. Commissioner, 4 T.C. 802.[4]

■ The taxpayer points to the case of Maud Gillespie involving income from the same source, wherein the Board reached an opposite result, (43 B.T.A. 399, affirmed 9 Cir., 128 F.2d 140) and argues that since under the philosophy of the Blair and Henricksen cases, an erroneous decision cannot be successfully pleaded as an estoppel to a subsequent suit, the doctrine does not apply here. It is true that the Board reached a directly opposite conclusion in the Maud Gillespie case, but its decision there turned upon facts which were not offered or considered in the taxpayer's former case. In Maud Gillespie's case involving income for the year 1935, there was evidence from which the Board was warranted in concluding, as it did, that Maud Gillespie intended to effect a gift to the Company of all the property in excess of an amount necessary to provide the stipulated annuity for her lifetime, thereby safeguarding the welfare of her children who were the beneficial owners of the company. The Circuit Court affirmed the Board, but neither the Board nor the Court on appeal repudiated or criticised the former holding in the taxpayer's case. It merely distinguished the cases upon facts appearing on the record in the latter case, and conspicuously absent in the former. There was no change of law repudiating an erroneous decision as in the Blair and Henricksen cases.

It may be conceded that the taxpayer's testimony touching his intentions with respect to the property transferred to the Company at the time of the execution of the contract is entirely sufficient to justify the same conclusions the Board reached in Maud Gillespie's case. But whatever those intentions, they were the same in the former case as here—they could not have

---

[3] Hobson's Choice & Similar Practices in Federal Taxation, 48 Harv.L.Rev., 1281.

[4] See Res Judicata in Federal Tax Cases, 46 Yale L.J. 1320.

changed; no new facts were tendered in this case which did not exist and were not available for production in the former case. The applicable and controlling facts remain the same—they are static, immutable, and therefore precisely identical for the purposes of estoppel.

But the taxpayer argues that the constitutionality of Section 22(b)(2) was not directly tendered as an issue in the former case, and that since the Board gratuitously treated it as an incident to the issues presented, the question is not foreclosed by what was said in the former case. In our view, this point is not well taken. As we have seen, the constitutional issue was directly presented to and decided by the Board.

■ The contention is also made that the Tax Court erroneously admitted the proceedings in the former case in support of the plea of estoppel. It is argued in effect that since the judgment was not attached to the affirmative plea, but pleaded by reference to the docket number, and no proof of finality offered, it was not pleaded and proven with sufficient certainty. We think, however, that the former judgment was sufficiently pleaded, and certainly the judgment standing alone carries with it the presumption of finality. We therefore conclude that the judgment in the first case is conclusive of the issues presented here.

The judgment is affirmed.

RICE, District Judge, dissents.