Order may be drawn in accordance with this opinion.

**BOSTON SAFE DEPOSIT AND TRUST COMPANY, Trustee,**

v.

**UNITED STATES.**

Civ. A. Nos. 53–327–F, 53–799–S, 53–1065–F, 54–766–F.

United States District Court, D. Massachusetts.

March 18, 1955.

Goodwin, Proctor & Hoar, Roger P. Stokey, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiff-trustee in these cases seeks to recover alleged overpayments of income taxes. The four actions cover tax payments for the years 1946 through 1952. As to each of these years the same essential question is presented, although from year to year there have been changes in relevant figures and circumstances.

Plaintiff is trustee of a trust established by the Sixth Item of the will of Herbert A. Wilder, who died in 1923. The trust was charged with the payment of fixed annuities to certain named persons, and with the upkeep of certain specified real estate. These charges, together with the trustee's fees and expenses, were to be paid from income, or from principal if the income proved insufficient. At the death of the last of testator's three daughters, the trust was to terminate, and the entire fund was to be distributed in specified proportions among fourteen institutions, all of which are conceded to be charitable or educational institutions within the meaning of § 23(o) of the Internal Revenue Code, 26 U.S.C.A. § 23(o). Under the terms of a compromise agreement made in 1924 between these charitable remaindermen and the testator's daughters, certain additional payments may be made each year from the surplus or accumulated income of the trust but not from principal.

In each of the years since 1940 there has been more than enough current trust income to provide for all of these payments. Trustee has paid an income tax each year on this surplus income, and now seeks to recover these taxes for 1946 and subsequent years on the ground that there is no real likelihood that any of this surplus will need to be used for any of the payments to be made by the trust and will eventually pass, at the termination of the trust, to the charitable beneficiaries. Hence the trustee contends that it was entitled to a deduction in each year of the amount of this surplus income, as an amount permanently set aside for charitable purposes. 26 U.S. C.A. § 162(a). Claims for refund have been duly filed by trustee and disallowed by the Commissioner of Internal Revenue.

The principal distribution of trust income during the tax years in question has been in the payment of annuities. The principal annuities to be paid have been those to the three daughters of the testator, $7,000 to Mary C. Kent and $6,000 each to Margaret G. Wilder and Constance P. Wilder. There are a number of smaller annuities, which in 1946 amounted to $6,340. This amount has since been reduced by the death of several of the annuitants. All these annuities will cease upon the termination of the trust at the death of the last survivor of the three daughters. Under the compromise agreement, additional sums are payable to the three daughters, not to exceed a total of $15,000 in any year.

Included in the expenses of the trust were payments for the upkeep of real estate of the testator in Newton, Massachusetts, and Lebanon, New Hampshire, so long as they were occupied by

his daughters. Both of these properties have now ceased to be so used and have been sold, the Lebanon property in 1952 and the Newton property in 1953.

The duration of the trust is limited to the lives of the three daughters. In 1946, the first tax year involved here, Constance Wilder was 73, Mary Kent was 69, and Margaret Wilder was 67. Actuarial evidence as to the life expectancy of the last survivor of the daughters was presented, using computations based on various tables. Using the tables which give the longest life expectancy, this was 16.4 years at the end of 1946 and of course progressively diminished to the figure of 13.4 years at the end of 1950. Margaret Wilder died on October 3, 1951. The expectancy of the last survivor of the two remaining sisters was computed as 10.2 years and 9.6 years at the end of 1951 and 1952 respectively. On October 22, 1954 Constance Wilder was judicially declared an insane person. She is now confined to a hospital and there was medical evidence that there is no prospect of improvement in her condition. In addition to her income from the trust she has approximately $50,000 in funds of her own, held by plaintiff as her guardian, and available for her support.

The will made provision for the payment of additional sums to certain beneficiaries in case of sickness. These payments were limited to a total of $25,-000 over the life of the trust, and most of this fund has already been expended. Under the compromise agreement payments could be made to a grandchild of the testator until he reached 21 and completed his education. The three living grandchildren are all over 21 and have completed their education, and the government concedes that the possibility of the birth of other grandchildren is extremely remote.

On the following table is shown, for each of the tax years involved, the total trust income, the maximum allowable distribution (if the whole of the additional $15,000 permitted by the compromise agreement had been paid), the actual distribution to annuitants, the total of the distributions and the fees and expenses (including upkeep of real estate), the excess (before payment of federal income taxes) of income over payments, and the aggregate accumulation of income.

|  | Trust income | Maximum allowable distribution | Actual distribution to annuitants |
|---|---|---|---|
| 1946 | $ 49,952.55 | $ 40,340.00 | $ 33,566.64 |
| 1947 | 48,051.50 | 40,340.00 | 34,049.22 |
| 1948 | 45,694.21 | 39,500.00 | 33,749.95 |
| 1949 | 47,928.84 | 39,500.00 | 33,745.94 |
| 1950 | 53,534.79 | 37,100.00 | 36,481.66 |
| 1951 | 53,081.37 | 36,200.00 | 30,650.02 |
| 1952 | 53,289.52 | 30,200.00 | 25,422.65 |

|  | Total distribution and expense | Excess of income over all payments | Aggregate accumulation of income |
|---|---|---|---|
| 1946 | $ 41,547.99 | $ 8,404.56 | $ 55,353.03 |
| 1947 | 42,591.42 | 5,460.08 | 56,151.20 |
| 1948 | 41,903.02 | 3,791.79 | 56,543.56 |
| 1949 | 41,672.09 | 6,256.75 | 62,020.91 |
| 1950 | 46,701.77 | 6,833.02 | 67,049.09 |
| 1951 | 45,374.40 | 7,706.97 | 67,806.06 |
| 1952 | 32,735.95 | 20,553.57 | 85,730.59 |

The figures for the preceding years 1940 through 1945 show a similar pattern of an annual excess of income over total distributions.

Under the terms of the will, upon the death of Margaret Wilder the trustee could have turned one-third of the trust fund over to the ultimate charitable beneficiaries. It has not done so, and these beneficiaries up to the present time have not requested it to do so.

The question is whether in 1946 and each of the succeeding years the excess income not used for the payment of the annuities and other charges and expenses of the trust can be said to have been permanently set aside for charitable purposes. As a matter of legal power, this income is subject to use in subsequent years to meet the required payments and, if so used, will not, of course, pass to the ultimate charitable beneficiaries. The question, however, is not one of theoretical legal possibility, but of whether in the light of the terms of the trust, the size of the corpus and income, and the circumstances governing the size of the payments to be made, it can be said as a practical matter that there is no real likelihood that this excess income will ever have to be used to meet future trust payments and so be diverted from the ultimate charitable purposes of the trust. Langenbach's Estate v. Commissioner of Internal Revenue, 6 Cir., 134 F.2d 590; Commissioner of Internal Revenue v. Upjohn's Estate, 6 Cir., 124 F.2d 73; Commissioner of Internal Revenue v. F. G. Bonfils Trust, 10 Cir., 115 F.2d 788; Holcombe v. United States, D.C., 41 F. Supp. 471. The requirement of § 162(a) that the income must be set aside for charity "pursuant to the terms of the will" are of course satisfied here, since in accordance with the provisions of the will all principal and income not expended during the life of the trust must eventually be paid to the charitable beneficiaries. Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 383, 57 S.Ct. 813, 81 L.Ed. 1169.

In this case there is no problem of a sufficiently definite standard to be used in determining future payments. The annuities to be paid are fixed in amount and the amounts of the other fees and charges are subject to reasonably accurate prediction.[1] Only the additional payments under the compromise agreement are subject to the trustee's discretion, but even these are limited to payments to maintain the beneficiaries on a previously existing standard of living, and in any case cannot exceed $15,000 per year.

Considering the circumstances existing in 1946, it seems clear that there was no practical likelihood that the excess income for that year would ever be diverted from the charitable beneficiaries. Since 1940, the income had consistently proved more than enough to meet the annual trust payments. The trust in any case would end with the death of the last of the three principal annuitants, so that in the light of their life expectancy it would probably last about 15 years longer. It was very likely that even before that the amounts of the annual payments would be further reduced by the deaths of various annuitants. It could certainly be said in 1946 that it was probable that in any future year the current trust income would suffice to meet all current payments. At that time, moreover, the trust had accumulated excess income from previous years of over $55,000, on all of which the trust had paid income taxes in the year of receipt. With this fund available in case there should be in any future year a deficiency in income, it does not appear that at the end of 1946 there could be said to be any serious practical possibility that the excess income of that year would ever be used to meet trust payments. While it cannot, of course, be said that it was then absolutely certain it would eventually go to

---

1. The largest charge involved here is the trustee's compensation which is set at 4% of income plus ³⁄₁₀ of 1% of principal, and therefore will decrease with any falling off of trust income.

the charities, it can fairly be said that the uncertainty involved was not "appreciably greater than the general uncertainty that attends human affairs." Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647.

As to each of the succeeding years, the circumstances are, of course, even more favorable to the taxpayer. The annual income has increased, the possible payments to be made have decreased, and the probable duration of the trust has grown shorter. What has been said as to the unlikelihood that the 1946 excess income would fail to go to the charities applies therefore with even more force to the excess income for each of the subsequent years involved here.

█ During some of the years in question part of the income of the trust represented gains from sales or exchanges of property of the trust, which under Massachusetts law becomes part of the corpus of the trust. Holcombe v. Ginn, 296 Mass. 415, 416, 6 N.E.2d 351; Chase v. Union National Bank, 275 Mass. 503, 176 N.E. 508. The principal of the trust is not subject to invasion for the payment of the additional sums provided for in the compromise agreement and, hence, so far as the excess income for certain years is made up of gains from sales or exchanges of property, it is far more unlikely that it will ever be diverted from the ultimate charitable beneficiaries.

As a further defense to this action, the United States argues that plaintiff is estopped from maintaining this suit by the decision in a previous action by plaintiff involving taxation of the income of this same Wilder trust. Boston Safe Deposit & Trust Co. v. Commissioner of Internal Revenue, 66 F.2d 179. In that case it was held that the surplus trust income for the years 1926 and 1927 was not deductible as permanently set aside for charitable purposes.

█ It seems to be the contention of the government that the holding of the court in the earlier case was that as a matter of law, under the terms of the Wilder will, surplus income could never be regarded as having been permanently set aside for charity. This would lay down the rule that the mere existence of the power to invade the corpus would bar any deduction, no matter how unlikely it might be, in the light of the circumstances and of the standards set up by the will, that any invasion ever would be necessary. Such a holding would be clearly in opposition to the well-established rule accepted both earlier in Hartford-Connecticut Trust Co. v. Eaton, 5 Cir., 36 F.2d 710, and in subsequent cases, such as, Langenbach, Upjohn, and Bonfils, cited supra. However, the court does not appear to have gone to the length contended for by the government. In referring to the Hartford-Connecticut Trust case, supra, it expresses no dissent from the rule of law laid down there, but distinguishes that case on the basis that the facts placed any actual use of the power to make payment from principal outside the realm of reasonable possibility. The earlier Boston Safe Deposit & Trust Co. case has already been interpreted by this court as having been based on the factual finding that future invasion of the corpus was probable. Holcombe v. United States, supra, 41 F.Supp. at page 477.

█ While the doctrine of collateral estoppel by judgment is applicable to tax cases, it is to be narrowly applied, and only when it is clear beyond doubt that the precise point was actually contested and decided in the earlier action. Pelham Hall Co. v. Hassett, 1 Cir., 147 F.2d 63, 67. It is not to be applied where the controlling facts and circumstances are not the same in the earlier and later cases, or where the decision has been rendered obsolete or erroneous by development of the controlling legal principles in later decisions. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Gillespie v. Commissioner of Internal Revenue, 10 Cir., 151 F.2d 903, 906. If the earlier case involving this trust lays down the absolute rule that under no circumstances could any surplus income of this trust ever be regarded as permanently set aside

for charity, it squarley conflicts with the rule uniformly accepted in subsequent decisions, and should not bar this action. Otherwise the case merely involves a holding that, under the circumstances existing in 1926 and 1927, there was a sufficient possibility of future invasion of the trust corpus to require a denial of the deductions claimed for those years. Such a holding in no way could bar a similar action for the years involved here when there have been significant changes in such matters as the size of the required annual payments, the life expectancy of the annuitants and the probable duration of the trust, and the amount of accumulated surplus income.

Judgment in each of these cases will be for the plaintiff.