Harvey VOGEL, dba Ken-Add Machine Company, Plaintiff,

v.

A. R. KNOX, District Director of Internal Revenue for the District of Minnesota, Defendant.

Civ. No. 5219.

United States District Court
D. Minnesota, Fourth Division.
Jan. 3, 1957.

Salisbury Adams, Minneapolis, Minn., for plaintiff.

Sheldon Gitelman, Washington, D. C., for Government (Dept. of Justice).

DEVITT, District Judge.

The plaintiff taxpayer seeks a refund of manufacturer's excise taxes in the amount of $2,204.64, assessed for the period from December, 1952 through June 30, 1954.

Section 3406(a) (6) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3406(a) (6), under which this tax was assessed, levies a ten per cent excise tax on manufacturers, producers and importers of business and store machines. Under the heading of this statute, "Business and store machines", is enumerated such equipment as adding machines, tab-

ulating machines, hand staplers, check writing and cancelling machines, and many other devices commonly used in the operation of a present day business establishment or office.

The item involved in this case is a pocket or purse size adding machine manufactured by the taxpayer and bearing the trade name "Ken-Add." It is enclosed in a flat metal case, and is so constructed that with the aid of a metal stylus, cogged wheels may be manipulated to produce a numerical total up to four digits. The device will register up to $99.99 in dollars and cents, or 9,999 employing simple arithmetic units.

The taxpayer's contention is that "Ken-Add" is not primarily adaptable to use as a business or store machine and that, therefore, it is without the scope of Section 3406(a) (6) and not subject to the excise tax.

The government argues (1) that the device is at least suitable for some business or store purposes and therefore taxable, (2) that the taxpayer is not entitled to a refund since the evidence does not show that it was he who bore the economic burden of the tax rather than the ultimate purchaser by inclusion of the tax in the sales price, and (3) that the plaintiff has failed to comply with the regulations regarding its claim for refund and that this court is consequently without jurisdiction to hear the claim. The United States has counterclaimed for excise taxes allegedly still due; plaintiff denies these taxes are due.

*1. Is the device a business or store machine within the meaning of Section 3406(a) (6)?*

Under the heading of "Business and store machines" is listed "adding machines" as one of many specific items subject to the tax imposed by Section 3406 (a) (6). Without belaboring the point, the "Ken-Add" device is unquestionably an adding machine. But, as the government concedes, the heading of the statute, "Business and store machines," qualifies the items listed thereunder, and the device must also be found to be a

business or store machine to be subject to the tax. See Treasury Regulation 36, Section 316.140. To state the issue briefly, we must decide whether a somewhat rudimentary adding machine which may conceivably be used for some business or store purposes is subject to the excise tax, as the government contends, or whether it is necessary that this item be an adding machine which is primarily adaptable to business or store uses to come within the purview of the statute, as the taxpayer has argued, citing Universal Battery Co. v. U. S., 281 U.S. 580, 584, 50 S.Ct. 422, 74 L.Ed. 1051.

Plaintiff's device, albeit an adding machine, is barren of all the extra devices commonly associated with the modern mechanical office adding machine. It is manually operated, has no simple means of clearing the machine to zero, cannot carry totals forward, and has no tape, and, therefore, no convenient means of checking the accuracy of the results. Considering the complex operations of a present day business office, it cannot reasonably be contended that "Ken-Add" is primarily adaptable for business or store uses. It is argued, however, that the device is at least suitable for use in a business or store, if not primarily adaptable for that purpose.

The advertising of "Ken-Add" contains mention of its possible use by salesmen and others in the commercial world. There is evidence of an isolated sale of several of the machines to the county tax assessor of Davenport, Iowa, but there is no evidence of what use was made of the machine there. Since the capacity of the device is limited to four digits, only $99.99 may be registered thereon, clearly inadequate for most, if not all, commercial operations involving dollars and cents, but the device, by the same token, can count up to 9,999 whether it be in boxes, watermelons, or rubber tires. The device was sold at wholesale to some office supply companies, but there is no evidence that any retail sales were made to businesses or offices for commercial use. The weight of the evidence shows without question that the device was de-

signed for and purchased by housewives and children, or was used for premium gifts. Considering the machine itself, it is my opinion that the device performs so few tasks outside of merely producing a total of numbers that the business or store uses to which it could be put would be few indeed. Evidence of the type of buyers of the machine reveals clearly that the commercial world thought very little of the feasibility of "Ken-Add" as a useful computing device in a business or store.

True, the device might be suitable, in the loose sense of that word, for use in a business or office. A worker on a shipping or receiving dock, for instance, could conceivably use it to count incoming items of freight. There is no evidence that the device was ever put to any such limited use. It would be an unreasonable expansion of the scope of Section 3406(a) (6) to include within it those items which only have a mere possibility of being used in a business or store. The case of Sackman Bros. Co. v. Hoey, 2 Cir., 125 F.2d 490, on this point is distinguishable for the reason that the statute there involved, by its wording, had a greater scope.

■ In support of its contention that suitability is the test, the government points out that Section 3406(a) (6) also lists typewriters, pencil sharpeners and portable hand staplers as subject to the tax, all of which are not necessarily primarily adaptable to business or store purposes, but may be employed in a variety of other uses. The word "suitable" implies appropriateness, and these items of course are certainly appropriate for use in any business or store. But "Ken-Add" lacks that essential appropriateness. It has little commercial utility and might justifiably be called a gadget. There is, at the least, a reasonable doubt whether Section 3406(a) (6) is broad enough to include a device such as "Ken-Add", and under these circumstances, the statute should be construed most favorably to the taxpayer. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211.

■ It is concluded that the "Ken-Add" pocket adding machine is not subject to the excise tax imposed by Section 3406(a) (6), I.R.C.1939.

*2. Has plaintiff established that the burden of the tax was borne by him and not passed on to the ultimate purchaser?*

■ Section 3443(d) (1) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 3443(d) (1) provides that no overpayment of an excise tax shall be refunded unless the taxpayer establishes that "* * * he has not included the tax in the price of the article with respect to which it was imposed, or collected the amount of tax from the vendee, * * * *". The purpose of this provision is to prevent the unjust enrichment of a taxpayer who has not suffered the burden of the tax, but has succeeded in passing the tax on to the ultimate purchaser. Con-Rod Exchange, Inc., v. Henricksen, D.C.W.D.Wash., 28 F.Supp. 924, 926.

In 1950, or shortly before, the inventor of the device, Pangborn, organized a corporation, the Ken-Add Machine Company, to exploit the invention. The plaintiff was at that time engaged by the company to manufacture the machine, but had no part in the management of the company. The sales price was set at $3.13 per item. In 1950 the company received a ruling from the Internal Revenue Service that "Ken-Add" was subject to the excise tax, and from that time until late in 1952, the tax was paid. The books of the company at that time carried an account for accrued excise taxes. Also, during that period, a sale of a number of the machines was made to a tax-exempt government agency, and the tax was deducted from the sales price. The taxpayer, who assumed the control and management of the company in late 1952, retained the same sales price of $3.13. He contends that his predecessors did not include the tax in the sales price, but that the economic burden of the tax was borne by the company. The evidence does not support this conclusion.

■ There is evidence that the original management considered the excise tax when the price was first determined. It is noted that there was no change of price after the adverse ruling was received from the Internal Revenue Service. The tax was computed at ¹⁄₁₁ of the sales price, or about 28¢ on each machine sold. A raise in sales price, coincident with the imposition of the tax, is often given great weight in determining whether the sales price included the amount of the tax; see United States v. H. T. Poindexter & Sons Merchandise Co., 8 Cir., 128 F.2d 992; Worthington Pump & Machinery Corp. v. U. S., 122 F.Supp. 843, 847, 129 Ct.Cl. 87; but the converse of this proposition is not necessarily true, and the failure to raise the sales price must be given significance only in relation to the attending circumstances.

■ It is difficult to believe that this infant company was willing to absorb an unanticipated 28¢ cut in profits; it is far more reasonable to conclude that the company had already contemplated the possibility of the excise tax being applicable when the price was originally established. The failure of the company to raise the price when it received an adverse ruling does not, under the peculiar facts of this case, indicate that the company absorbed the tax, but rather that the price had already been established in anticipation of the excise tax. I find, therefore, that the sales price of $3.13 included the amount of the excise tax and was originally established with the intention of passing the tax on to the ultimate purchaser.

Is the same conclusion applicable to the period covered by the taxpayer's claim? He argues that it is not.

In late 1952 the company suffered severe financial difficulties and the plaintiff taxpayer assumed control of the company. The precise issue in this case is whether the amount of the tax was also included in the sales price during the period December 1, 1952 to June 30, 1954.

■ The government has emphasized that the plaintiff maintained the same sales price of $3.13 as had his predecessors. It is urged that since this price was established to pass the tax on to the ultimate purchaser, it is reasonable to conclude that it served the same function when the taxpayer assumed control of the company. This is a logical argument. Section 3443(d) (1) clearly places the burden upon the taxpayer to prove that the tax was not passed on to the purchaser.

The only evidence adduced by the taxpayer to the effect that he did not include the excise tax in the price structure of $3.13 is his own testimony to that effect. He said that "there was no excise tax figured in." While there is no apparent reason to disbelieve him, the fact remains that he likewise testified that he knew that his predecessors had paid the excise tax. If the taxpayer did not intend to include the excise tax in the $3.13 price figure, it would be logical to conclude that the price would be reduced by the amount of the excise tax or, failing this, that the taxpayer would show affirmatively that the $3.13 figure included accumulated cost factors other than the approximately 28¢ excise tax. This he has not done.

It is not unreasonable to expect an experienced businessman, as is the plaintiff here, to produce records or analyses of the various factors that were considered in setting a price such as manufacturing cost, marketing expense, profit margin and the like. Mere uncorroborated testimonial utterances by the taxpayer, an interested party, are a poor substitute for such evidence.

Considerations of policy and sound administration compel that a taxpayer's naked assertion be held insufficient to satisfy the requirements of Sec. 3443(d) (1) when it is apparent that other more inherently reliable evidence could have been produced or when there has been no showing that competent corroborative evidence is unavailable.

The inclusion of the excise tax in the price structure by plaintiff's predecessor and the adoption of the same price by the plaintiff, with the knowledge that the tax was included, outweighs plaintiff's bare assertion that the tax was not included. Plaintiff has not discharged his statutory burden of proof. For a failure to prove that the tax was not passed on to the ultimate purchaser, he may not recover the tax paid. Feitler v. Harrison, 7 Cir., 126 F.2d 449; L. T. Piver, Inc., v. Hoey, 2 Cir., 101 F.2d 68, 69; Gay Games, Inc. v. Smith, 7 Cir., 132 F.2d 930; Luzier's, Inc., v. Nee, 8 Cir., 106 F.2d 130.

Because of the possibility of an appeal, it may be well to dispose of the government's final contention that the taxpayer failed to attach to his claim for refund a sworn statement that he has not included the tax in the price of the article and may not seek a refund. Such a statement is required by Treasury Regulation 46, Section 360.204, and is made a jurisdictional requisite by Section 3772(a) (1) of the Code, 26 U.S.C.A. § 3772(a) (1). The taxpayer admits that the statement was not attached to the claim. The Commissioner rejected the claim on the grounds that the claim merely reasserted arguments that had been disposed of adversely to the taxpayer and his predecessors in formal rulings of the Commissioner in 1950 and 1954. In effect, then, the Commissioner rejected the claim on its merits; he raised no objection to the absence of a sworn statement. Under these circumstances, the Commissioner has waived any objection he may have had to the technical sufficiency of the claim for refund. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619; Con-Rod Exchange, Inc. v. Henricksen, D.C.W.D.Wash., 27 F.Supp. 427; S & R Grinding & Machine Co. v. United States, D.C.W.D.Pa., 27 F. Supp. 429.

The government's counterclaim in this action is for taxes allegedly still due for the period involved in plaintiff's suit for refund. In view of our holding that the machine is not subject to the excise tax, the counterclaim must be dismissed.

The defendant will please prepare appropriate Findings, Conclusions, Order for Judgment and Form of Judgment, and submit copy to the plaintiff.