**HERRING MAGIC, a corporation,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15736.**

United States Court of Appeals
Ninth Circuit.

June 17, 1958.

Garvin, Ashley & Foster, Daniel J. Riviera, Thomas B. Foster, Seattle, Wash., for appellant.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Lee A. Jackson, Melva M. Graney, Charles B. E. Freeman, Attys., Dept. of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., Thomas R. Winter, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before BONE, BARNES and HAMLEY, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment denying appellant a refund of taxes paid pursuant to 26 U.S.C.A. § 4161, an excise tax imposed upon the sale by manufacturers and producers of certain named objects including "artificial lures."

Appellant is the manufacturer of a certain device called Herring Magic. This device is made of colorless, translucent plastic with hooks attached. In use, the head of a minnow or herring is placed in a cavity in the device and fastened by means of a pin inserted through the bait fish's head. The hooks of the Herring Magic are secured to the dead body of the bait fish by means of a body clamp in order to keep the hooks close to the underpart of the body of the bait fish at all times. When being trolled through the water, the Herring Magic, with its attached herring or minnow, provides whatever luring characteristics a dead bait fish might have plus produc-

ing a swimming action claimed to be identical to that of a live herring, a result caused by the hydrofoil of the Herring Magic. The device itself has no scent, does not resemble any natural food of game fish, and in trolling use is practically invisible. When used without a minnow or similar balancing weight, the Herring Magic tumbles erratically and tends to foul the line of the fisherman using it and thus has no practical value without the additional use of a small fish as bait.

The sole question presented to this Court is whether this patented device manufactured and sold by appellant is an "artificial lure" within the purview of 26 U.S.C.A. § 4161.[1]

We believe that appellant's product is such an "artificial lure."

■ Because the statute sets out no definition of "artificial lure" those words must be accepted in their ordinary and everyday meaning. The word "artificial" is defined as an adjective meaning:[2]

"1. a. Made or contrived by art; produced or modified by human skill and labor, often as an imitation of something found in nature;—opposed to *natural*; as, *artificial* heat or light, * * * "

From this definition and the ones which follow it in the same authority, it is apparent that the emphasis of the definition must be placed upon the "human skill and labor" element and the "opposed to natural." There thus can be no doubt that the plastic and steel device called Herring Magic, here under scrutiny, is "artificial."

It is appellant's contention, however, that Herring Magic is not a "lure" because the device in and of itself has little or no alluring qualities for game fish. We cannot agree with appellant's conclu-

sion. The device is designed to produce a certain motion or action under proper conditions and it is this motion or action which makes Herring Magic a saleable product. It is believed that the fish-like actions which it (Herring Magic) produces in the inanimate fish bait gives the entire setup (Herring Magic with minnow) an added allurement to game fish which the dead minnow alone does not have. This added luring power is produced by appellant's device.

An expert witness for appellee testified that Herring Magic is not necessarily limited to use with a fish as bait, but will give the aforementioned luring motion or action to any other object of a similar size, weight and shape. Testimony on both sides indicated that this motion or action attracted game fish.

One of the definitions Webster's New International Dictionary, Second Edition (unabridged) gives for the noun "lure" is:

"2. That which invites by the prospect of advantage or pleasure; an allurement; enticement."

It is apparent from the discussion above that appellant's product "invites by the prospect of advantage" the game fish it is designed to aid in catching through the imparting of fish-like motion to objects attached to it.

It should further be noted that the record indicates that among sport fishermen objects such as Herring Magic are thought of as "artificial lures." Appellee's expert witness, Mr. Korff, a manufacturer of fishing tackle and sport fisherman of long experience, identified Herring Magic as an "artificial lure," and appellant in its advertising designated the device on several occasions as a "lure." Mr. Miller, the inventor of Herring Magic, also identified it in his patent

---

1. 26 U.S.C.A. § 4161 (I.R.C. of 1954).

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of the following articles (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof) a

tax equivalent to 10 percent of the price for which so sold:
*     *     *     *     *
"Fishing rods, creels, reels and artificial lures, baits and flies. * * * "

2. Webster's New International Dictionary, Second Edition (unabridged).

application as a "fish lure" and a "fishing lure."

We think that the Herring Magic device manufactured by appellant is an "artificial lure" and as such comes within the orbit of the taxing statute here involved. It was, therefore, properly taxable and the judgment of the lower court must be and is affirmed.