COMMERCE–PACIFIC, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 962–58.

United States District Court
S. D. California,
Central Division.

Aug. 4, 1959.

George Bouchard, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

HARRISON, Chief Judge.

In this case the plaintiff seeks to recover certain excise taxes and poses the question whether the articles sold are "fishing rods" within the meaning of § 4161, I.R.C.1954, which virtually re-enacted § 3406(a) (1), I.R.C.1939 [26 U.S.C.A.]. The real question in dispute is whether the articles are rods or poles.

Plaintiff distributes articles made of bamboo which are intended to be used for fishing purposes. These articles come in from two to four sections that can be fitted together. Each section has string wrapped around the bamboo near the end, presumably for support purposes. At the end of the smallest section a metal loop is attached, where fishing line is to be tied or run through. The bamboo is treated with lacquer.

Under the general heading of "Sporting Goods" § 4161, I.R.C.1954, imposes a 10% excise tax on the sale by the manufacturer, producer or importer of "fishing rods, creels, reels and artificial lures, baits and flies". I.R.C. Regulations (1954) § 316.91 refer to these items as "fishing tackle". Internal Revenue Bulletin 1958–34 (Revenue Ruling 58–425) ruled that the excise tax was not due on "sales of bamboo cane poles which are in their natural state or merely straightened, scraped or varnished; however, the tax does apply (as to a fishing rod) if they have been cut into sections and fitted with ferrules". The Bulletin went on to say that the "rod" versus "pole" distinction was not crucial, but rather whether the bamboo was designed and prepared

for fishing purposes. The articles in question were in fact prepared for fishing purposes.

When you come to the distinction between a fishing pole and a fishing rod, you run into a brick wall. Just when a pole becomes a rod or when a rod reverts to a pole to me appears to be an insoluble question. Their use is basically similar and both come within the purview of "Sporting Goods".

■ Everyone was apparently happy and paid excise tax on the articles as rods over a period of time until the Customs Court decision, hereinafter referred to, when rods became poles. The Customs Court view was expressed in National Carloading Corporation v. United States, 36 Customs Court Reports 309, Abstract 59620 (1955). The Customs Court decided that for purposes of the Tariff Act of 1930, bamboo poles, with a single fitted joint and string wrapped around the bamboo for support, were not "fishing rods" but were "fishing tackle" and hence taxable at a lesser rate. The Customs Court was interpreting 19 U.S. C.A. § 1001, par. 1535, which provides:

"Artificial flies, snelled hooks, leaders or casts, finished or unfinished, 55 per centum ad valorem; fishing rods and reels, and parts thereof, finished or unfinished, not specially provided for, 55 per centum ad valorem; fish hooks, artificial baits, and other fishing tackle and parts thereof, fly books, fly boxes, fishing baskets or creels, finished or unfinished, not specially provided for, except fishing lines, fishing nets and seines, 45 per centum ad valorem * * *."

In 36 Customs Court Reports, where the abstract of the National Carloading case appears, the prefacing comment (at page 305) states that "abstracts of decisions of the U. S. Customs Court at New York are published for the information and *guidance of officers of the customs and others concerned.*" They are not intended as an interpretation of the Internal Revenue Code, a completely distinct statute and taxing operation. Revenue Rulings, the Internal Revenue Bulletin, etc., are designed to interpret the Internal Revenue Code.

■ While the Customs Court Abstract is a "guide" to the meaning of terms in the Internal Revenue Code, it should not be considered controlling. Two other aspects of the Customs Court decision might be mentioned. 19 U.S. C.A. § 1001, par. 1535, supra, is more detailed than I.R.C. § 4161, elaborating on various types of fishing equipment. Thus each term in the Tariff Act can arguably be construed more narrowly than in the I.R.C. Secondly, the Customs Court was dealing with *one joint* poles only. Plaintiff in this case deals in *one, two and three joint* articles, which recalls the dictionary definition of a fishing rod as one with "several joints".

■ It is my considered view that the articles involved were "fishing rods" within the meaning of § 4161, I.R.C.1954, and § 3406(a) (1), I.R.C.1939, not something separate and distinct. At least the plaintiff has not overcome its burden of proving by a preponderance of the evidence that the articles involved were not "fishing rods". The rulings of the Commissioner of Internal Revenue are presumptively correct and I feel the evidence does not justify their disturbance.

Having decided that the bamboo fishing articles here in question are within the term "fishing rods", as used in § 4161, I.R.C., and hence subject to tax, no *further matter need be decided.*

However, even if the contrary result were reached, namely that these articles were not within the meaning of the term "fishing rods" as used in § 4161, I.R.C. of 1954, plaintiff would still not be able to prevail.

■ Section 6416, I.R.C. of 1954, provides that no credit or refund "shall be allowed unless the person who paid the tax establishes * * *

"(1) That he has not included the tax in the price of the article * * * or has not collected the amount of the tax from the vendee".

The statute places the burden of proof squarely on the taxpayer. "The burden of proof placed upon a claimant by the refund statute is an onerous one." Finck Cigar Co. v. C.I.R., 5 Cir., 1943, 134 F.2d 261, 262. The natural presumption, when a 10% tax is imposed on all manufacturers or sellers *of this commodity*, is that this tax will be passed on to the customers as part of the cost of the product and will not be absorbed out of profits. Thus, as the court said in Andrew Jergens Co. v. Conner, 6 Cir., 1942, 125 F.2d 686, 689:

> "Under the circumstances here present, very clear and decisive evidence was required to establish that appellants had not included the tax in the price of their products * * the amount of the tax was no minor matter in determining the price at which the articles were to be sold. * * *"

As to how the burden of proof can be carried, the case of Vogel v. Knox, D.C. D.Minn.1957, 147 F.Supp. 10, 14, gives guidance. There it is stated:

> "It is not unreasonable to expect an experienced businessman, as is the plaintiff here, to produce records or analyses of the various factors that were considered in setting the price such as manufacturing cost, marketing expense, profit margin and the like. Mere uncorroborated testimonial utterances by the taxpayer, an interested party, are a poor substitute for such evidence."

Similarly in the case at bar, plaintiff failed to establish in detail its pricing structure, costs, market prices, profit margins, etc., either before or during the time the tax was collected. The bold statement by the President of plaintiff corporation that the tax was absorbed out of profits, which there is no reason to disbelieve, does not constitute "substantial evidence upon which a recovery could be predicated". Finck Cigar Co. v. Comm. Int. Rev., supra, 134 F.2d 261, 262. In other words, the substantial evidence required to overcome the natural presumption that a tax was passed on was not introduced by the plaintiff. The burden of proof has not been sustained.

The defendant is entitled to a judgment of dismissal. Counsel for defendant is directed to submit to me proposed findings of fact, conclusions of law and judgment in accordance with the rules of this court.