**NORRIS DISPENSERS, INC., Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 4–60–Civ. 219.**

United States District Court
D. Minnesota,
Fourth Division.

Sept. 12, 1962.

John W. Windhorst, Charles O. Howard, and Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for plaintiff.

Louis W. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., and John T. Piper, Attys., Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., for defendant.

EARL R. LARSON, District Judge.

This action is brought by Norris Dispensers, Inc., (taxpayer) for refund of a manufacturer's excise tax, interest and penalties.

The first question is whether the Norris Dairy Bar and the Norris Home Milk Dispenser, made and sold by plaintiff, are "household type refrigerators" within the meaning of § 4111 of the Internal Revenue Code of 1954.

These items may be briefly described, as there is no dispute as to their appearance and function. Both items consist of steel, enamel finished cabinets which are cooled by ordinary refrigerating units. Inside the cabinet of the Home Milk Dispenser there is space only for two 3-gallon milk cans; the Dairy Bar has an additional three-quarter cubic foot space designed for the cool storage of other dairy products. The milk is dispensed through a rubber tube which runs through a valve to the outside of the cabinet.

The taxability of the Home Milk Dispenser, the unit without the additional space, might be considered first. The Government contends that this item is within the statute in that it refrigerates food for the household. More precisely stated, the argument is that a refrigerator does not cease to be a refrigerator because it is a specialty refrigerator equipped to dispense the product which it stores. The taxpayer, on the other hand, argues that the legislative history of this section, the Commissioner's method of interpreting similar excise tax provisions, and factors deemed important in previous excise tax cases support its position.

There can be little doubt that the legislative history is of importance in construing any internal revenue statute. Cf. Commissioner v. Bilder, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962). The original section 4111[1] was passed in 1932 and then, as now, taxed household type refrigerators. In 1941 the statute was amended so as to tax sales of "refrigerators, beverage coolers, ice cream cabinets, water coolers, food and beverage display cases, food and beverage storage cabinets, ice making machines, and milk cooler cabinets * * *."[2] The taxpayer argues that the manner of changing the statute then is relevant now. It is contended that Congress could have made this change by simply deleting the term "household" but instead it chose to add a number of specific items used for cold storage of food and water but which are not usually known as "refrigerators." This is said to sustain the inference that Congress believed that the term "refrigerator" was limited in its meaning to articles usually known as "refrigerators". The Government, on the other hand, points to the committee report accompanying the same change which refers to the previously mentioned articles as "commercial types of refrigerators."[3] From this it argues that Congress understood the term "refrig-

---

1. 47 Stat. 263 (1932).
2. 55 Stat. 713 (1941).
3. H.Rep. No. 1040, 77th Cong. 1st Sess.

erator" to include all the various specialty types of refrigerators. These two arguments are both persuasive, but when they are pitted against each other the precise "intent" of Congress does not clearly emerge from the fray.

An additional bit of legislative history might be mentioned. In 1950 the statute was enlarged to provide an excise tax on "household type units for the quick freezing or frozen storage of foods" and on combinations of such units and household type refrigerators.[4] Both parties optimistically seize upon this change. The taxpayer argues that if the term refrigerator broadly includes all articles used for the cold storage of food, then it would seem to include freezers just as much as milk dispensers. The Commissioner did not tax freezers prior to this amendment and thus, argues the taxpayer, should not tax milk dispensers now. The Government's answer is that a freezer is not designed nor suitable to do the work of a refrigerator, whereas the taxpayer's product is designed and utilized to do work which would otherwise be done by refrigerators. Although these arguments could stand closer scrutiny, it seems preferable to conclude that the entire legislative history cannot be relied upon to determine a result either way.

The Commissioner's regulations require brief mention only. The particular regulation involved here, reprinted in the margin,[5] is not as helpful as some; in fact, it begs the question by defining a refrigerator as a refrigerator.

▮ The basic problem is one of statutory construction and these rules are well settled. When the statute does not define the article taxed, then the descriptive word used must be accepted in its ordinary and everyday meaning. Herring Magic v. United States, 9 Cir., 258 F.2d 197, 198 (9th Cir., 1958). The Courts have consistently held that " * * words of a statute should be presumed to be used in their ordinary and usual sense within the meaning commonly attributed to them, unless the contrary clearly appears." Commerce Pacific Inc. v. United States, 278 F.2d 651, 654 (9th Cir., 1960), quoting from Hine v. United States, 113 F.Supp. 340 at 343, 125 Ct.Cl. 836 (1953). See also Crane v. Commissioner, 331 U.S. 1, 6, 67 S.Ct. 1047, 91 L.Ed. 1301 (1946); Bostitch v. United States, 164 F.Supp. 877, 878 (D.C.R.I. 1958). The taxpayer argues that the Commissioner himself has also followed substantially the same rules in construing other excise provisions.[6] However, in view of the rules previously mentioned, it need not be decided whether the Commissioner's manner of construing other provisions is binding upon the Government in the construction of this provision.

Before deciding whether a milk dispenser is a refrigerator, the meaning of the words "household refrigerator" should be explored. Webster's 3rd New International Dictionary defines a refrigerator as " * * * a cabinet or room for keeping food or other articles cool."[7] Illustrative of the definition, the dictionary shows a picture of the typical household refrigerator. The picture there presented, it would seem, is the image which would leap to the mind of the average person when the words "household refrigerator" were mentioned.

4. 64 Stat. 965 (1950).

5. § 48.4111–2 Definitions—For purposes of the tax imposed by section 4111, unless otherwise expressly indicated:

(a) Household type refrigerators. The term "household type refrigerators" includes refrigerators for single or multiple cabinet installations which—

(1) Have an actual, practical, commercial fitness, or are specifically designed and constructed, for household use,

(2) Have, or are primarily designed for use with, a mechanical refrigerating unit operated by electricity, gas, kerosene, or gasoline, and

(3) Are arranged to provide refrigerated storage space for the preservation of food or low temperature space for making ice, ice cubes and frozen desserts.

6. Regs. §§ 48.4001–6, 48.4001–7 and 48.-4031–1(b).

7. Page 1910.

Those words suggest a tall rectangular box which contains at the desired temperature such things as soft drinks, butter, eggs, leftovers, milk, ice cubes, and perhaps vegetables in a crisper. These articles and others are of varying shapes and sizes. Maximum utilization of space has dictated that the household refrigerator provide compartments of different sizes or shelves spaced at varying distances. In addition, extensive packaging of frozen foods has created a demand for at least some freezer space in the average household refrigerator. The taxpayer has introduced pictures of several household refrigerators. One is large; one is small. One has a separate freezer space; one does not. One late model has swing-out shelves, swing-out vegetable bins, a swing-out "butter conditioner," and a swing-out egg tray. This latter model can hardly be described as typical, but all of plaintiff's exhibits do have certain common interior characteristics: compartmentalization, a crisper, ice trays and some freezing space.

Taxpayer's evidence thus suggests that before an item is taxable as a household refrigerator, some or all of these minimum features must be present. To rebut this evidence, the Government offered a small refrigerating cabinet manufactured by the taxpayer called the Cold Bar. This item had none of the foregoing features but had been taxed as a refrigerator without protest by the taxpayer. However, this Court concludes that the four interior characteristics previously mentioned are elements basic to household refrigerators as those words are commonly and popularly used. To eliminate some of these elements might be permissible; to eliminate all would be fatal to the ordinary concept of a household refrigerator.

The question is finally reached: Is the taxpayer's Milk Dispenser a household refrigerator within the plain and ordinary meaning of those words? No evidence was produced that anyone, the manufacturer included, has ever described it as such. Cf. Herring Magic v. United States, 258 F.2d 197 (9th Cir., 1958). In fact, there was evidence that the taxpayer's milk dispensers have never been referred to in the milk dispenser industry or in the retail appliance business as "refrigerators."

Putting aside the oral testimony, an examination of the characteristics of the Milk Dispenser reveals none of those elements previously found to characterize the familiar household refrigerator. It seems doubtful that any appreciable number of people on the street, housewives, or any other segment of the populace would consider this Milk Dispenser to be a household refrigerator within the plain and ordinary meaning of those words. If Congress had phrased this statute to tax "household refrigerating devices" or had used some other equally broad terminology, that would be another matter. But Congress was fairly specific; it taxed "household refrigerators." That, in the opinion of this Court, is unequivocal language. If plain and ordinary meanings are to be given to words, the statutory phrase must be held to exclude the taxpayer's Milk Dispenser. The Dairy Bar is not brought within the statute because of the simple addition of a small refrigerated space. To suggest otherwise would seem to strain common meanings.

Factors determinative of previous excise tax cases seem of equal importance in this case. In Bunton Co. v. Gray, 59–1 U.S.T.C., Par. 15,219 (W.D.Ky.1959), the Court asked whether the article named in the statute had "an actual practical commercial fitness for household use as" the article sought to be taxed. The Court there concluded that a lawn trimmer with a cutting width of 16 inches or more was taxable as a power lawn mower, whereas a prior model with a cutting width of only 12½ inches had not been. Another case involved a manufacturer's kit consisting of everything necessary to a fishing rod except the guides and the tip-top. The customer completed the kit in accord with his own peculiar requirements. Despite the contrary nomenclature of a shaft or "blank", the Court held that

the product was a fishing rod for no other practical use for it could be conceived. Hine v. United States, 113 F.Supp. 340, 125 Ct.Cl. 836 (1953).

A similar case is Winslow Skate Mfg. Co. v. United States, 50 F.2d 299, 72 Ct.Cl. 323 (1931). There the taxpayer argued that ice skates specially constructed for children were toys and not sporting goods. The Court, however, reasoned that children used the skates in the same manner as adults and thus they were taxable. In Deluxe Check Printers v. Kelm, 99 F.Supp. 785, (D.Minn.1959) (Donovan, J.) the "use" test was dispositive of the Government's argument that a cover for check books should be taxable as either a purse, handbag, pocketbooks, wallets, billfolds, or a card, pass, or key case. Judge Donovan pointed out that to stuff additional material in the pockets of the cover would strain the seams and probably rip them, concluding that the cover was neither designed as nor suitable for use as any of the items listed.

These cases seem persuasive of the one at bar. The question whether these milk dispensers have "an actual practical commercial fitness for household use as", a household refrigerator scarcely survives its statement. Bunton Co. v. Gray, supra. They certainly were not designed to be used as such. The taxpayer's Milk Dispenser has no shelves, no crisper, no ice trays and no freezer space. Even if it were desired to remove the two 3-gallon cans, only a small amount of the already minimal storage space could be utilized. In addition, a householder cannot use a Norris Milk Dispenser in the manner for which it was designed unless there is a dairy to service it. There was evidense that these milk dispensers could not and were not being sold as household refrigerators through retail department stores. These factors lead to the conclusion that the taxpayer's Milk Dispenser cannot be practically used as a household refrigerator. The addition of a small refrigerated space does not sig- nificantly alter the taxpayer's Dairy Bar so as to bring it within the purview of the statute. As a practical matter, it seems clear that there is not a housewife in the United States who would go shopping for a household refrigerator and return satisfied with either of these milk dispensers, even if she could buy one at retail.

The Government inevitably has to bottom its case on the fact that both a milk dispenser and a household refrigerator provide cold storage of food substances in the home. This dubious factual similarity is supposed to sustain the inference that they are taxable alike. This proves too much. No one would tax a bus as a taxicab, though they both provide public transportation. No one would tax beer as a soft drink though they both provide liquid refreshment. Why should milk dispensers be taxed as household refrigerators simply because they both provide refrigeration? Both the types and temperatures [8] of the food stored in the two are different, not to repeat all the previously mentioned differences. The basic obstacle in the Government's path is the narrow phrasing of the statute. The unequivocal words used by Congress simply do not afford a basis for the broad contentions presented here.

The Government cites several cases for the proposition that where the manufacturer's product is suitable to do the work of the taxed article, the mere fact that it has a special function to perform within its general category will not exempt it from a tax. See e. g. Minneapolis Honeywell Regulator Co. v. United States, 41–2 U.S.T.C. par. 9536 (D.Minn. 1941), where a clock which was manufactured as an integral part of a thermostat was taxable as a clock. Some of the cases relied on might possibly support such a theory, even though they do not articulate that rationale. In any event, the proposition seems inapposite here, its premise not being present. In the Honeywell case there was no doubt that the clock was a clock, but in this case

---

8. Storage temperatures are generally maintained at about 33°–35° in the dispensers.

there is considerable doubt that these milk dispensers are refrigerators or that they are suitable to do the work of household refrigerators.

█ The conclusion seems clear. Both the plain and ordinary meaning of the words "household refrigerator" and the fact that these milk dispensers cannot be practically used as refrigerators compel a holding that these milk dispensers are not taxed by § 4111 of the Internal Revenue Code.

█ The next question is whether the small refrigerated space in the Dairy Bar might alternatively be taxed as a household refrigerator. This is another question which scarcely survives its statement. The possibility of such a holding was actually put forth defensively by the taxpayer. The Government has argued for taxation of the entire article but would doubtless accept any revenue it can get. This Court has difficulty believing that Congress wished to tax small refrigerated spaces which might turn up in merchandise made for purposes unrelated to those of the article taxed, here the household refrigerator. In the Honeywell case supra the clock served an important role in the main function of the thermostat, but that is not true of the space in the taxpayer's Dairy Bar. The fact that such a space is not necessary is demonstrated by the fact that the taxpayer's first model, the Home Milk Dispenser, did not have one. The space appears to have been added as an afterthought, perhaps because the increased cost would be small and the space might help to sell a few units. In any event, this Court does not think the space is a household refrigerator within the meaning of § 4111 of the Internal Revenue Code.

█ The third question is whether the taxpayer has presented the requisite proof that the excise tax has not been included in the price of the product nor collected from the purchasers. See 26 U.S.C. § 6416(a). If this burden has not been sustained, then the taxpayer is still not entitled to a complete refund.

The cases in this District have taken differing views as to the above statute. Compare Vogel v. Knox, 147 F.Supp. 10 (D.Minn.1957) with Deluxe Check Printers, Inc. v. Kelm, 99 F.Supp. 785 (D.Minn.1951). The latter case contains language suggesting that when the taxpayer has paid the tax under protest, then the burden is on the Government to show that the tax was not passed on. This view is not adverted to in the former case, but Judge Devitt's opinion can easily be construed as an implied rejection of it. In this Court's opinion the statute places the burden on the taxpayer. Some Courts have gone further. See e. g. Commerce-Pacific, Inc. v. United States, 175 F.Supp. 227 (D.Cal.1959) (natural presumption that taxpayer had passed on the tax).

Judge Devitt's opinion in Vogel v. Knox, supra, indicated that when the circumstances surrounding a price increase suggest that the obvious motive was to pass on the excise tax, then it is incumbent on the taxpayer to offer more than uncorroborated testimony that the contrary was true.

The evidence might best be discussed in chronological order. The taxpayer began manufacturing these dispensers on January 1, 1956. In late 1957 or in January, 1958, the taxpayer was visited by an Internal Revenue agent who gave his opinion that the dispensers were subject to the excise tax. There was evidence that prior to this time the taxpayer's employees who were responsible for tax returns had no reason to believe that such returns were required. On January 22, 1958, the taxpayer received opinion of counsel that these items were not taxable. The taxpayer then requested its counsel to seek a ruling from the Internal Revenue Service. A hearing on this ruling took place in Washington, D. C., on March 24, 1958. On April 11, 1958, the taxpayer advised its salesmen of a price increase. On April 16, 1958, the District Director in St. Paul received from Washington a ruling adverse to the taxpayer. This ruling may have been

sent on April 11; the evidence was not clear on this.

There was further evidence that in March or April of 1958 three principal officers of the taxpayer met, discussed profit margins on the milk dispensers, and decided that a price increase was necessary to offset previous losses. The taxpayer's comptroller during the period in question testified that this decision was based on monthly financial reports and other basic records. These records were not introduced at the trial. However, a graphic presentation of the taxpayer's production costs was introduced and explained by the taxpayer's comptroller. This chart showed a loss on previous sales. It was freely admitted that this exhibit was prepared for purposes of the trial and was not in existence at the time at which the price increase was decided. The taxpayer's officers who made the decision all testified that a desire to pass on the excise tax was not a motivating factor. There was evidence that the taxpayer continued to lose money on its dispensers even after the price increase. The taxpayer's comptroller testified that in May or June of 1958 a liability accrual was begun to cover a possible excise tax on the dispensers. In short, the taxpayer offered considerable evidence to support its contention that the price increase would have been put into effect even if the Internal Revenue Service had not been in the process of asserting an excise tax on its milk dispensers.

The Government's evidence on this issue was not extensive. Its only exhibit was a letter from the home office to its salesmen stating that the Federal Excise Tax would be excluded from commissions on milk dispenser sales, effective January 1, 1959. The letter was dated February 24, 1959. The price increase had, of course, been in effect since May 1, 1958. The Government argues that this shows that the excise tax was included in the price at that time.

The problem is one of weighing the conflicting evidence and inferences. The taxpayer has the burden, which in this case is particularly heavy due to all the circumstances. Considerable evidence has been offered by the taxpayer, all or none of which can be accepted by the trier of fact in the exercise of its familiar function. The conclusion of this Court is that the taxpayer has not sustained the burden imposed by Section 6416 of the 1954 Internal Revenue Code.

The Court concludes, finally, that no penalty should be imposed for taxpayer's failure to file excise tax returns. Reliance on competent legal advice may be sufficient reasonable cause for the failure to file excise tax returns. Spouting Rock Beach Corp. v. United States, D.C., 176 F.Supp. 938.

The foregoing constitute findings of fact within Rule 52, F.R.Civ.P.

Counsel will compute the amount of refund due the taxpayer subject to the approval of the Court and entry of judgment thereon.